**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John D Thompson,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>City of Lake Havasu City, et al.,<br><br>　　　　　Defendants. | No. CV-16-08271-PCT-DLR<br><br>**ORDER** |

At issue are three motions for summary judgment: two filed on behalf of Plaintiff John Thompson and one on behalf of Defendants the City of Lake Havasu City ("City") and Lake Havasu City Police Department Officers Michael Fuller and Jonathan Gray. (Docs. 29, 38, 57.) Thompson seeks summary judgment on all of his claims; Defendants seek summary judgment on Thompson's 42 U.S.C. § 1983 claim only. The motions are fully briefed and the Court heard oral argument on January 11, 2018. For the following reasons, the Court grants summary judgment for Officer Fuller on Thompson's § 1983 claim, but denies the remainder of all three the motions.

**I. Background**

In 2015, non-party Dennis Kropp consigned a boat to non-party Offshore Custom Marine ("OCM"), a boat dealership in Lake Havasu City owned by non-party Tim McDonald. Thompson purchased the boat from OCM for $40,600. The boat then was hauled to South Carolina, where Thompson lives. Upon its arrival, Thompson noted that

the boat had been damaged during transport. Accordingly, OCM hired non-party Douglas Parks to haul the boat to California for repairs, and then to transport it back to Thompson in South Carolina.

While en route from California to his home in Lake Havasu City, Parks received a phone call from Kropp, who claimed to be the owner of the boat. Kropp asked Parks to turn the boat over to him, but Parks refused both because he did not know who Kropp was and because he had instructions to deliver the boat to Thompson in South Carolina. Unbeknownst to Parks, Kropp had not been paid his share of the purchase price from OCM and McDonald. Kropp had reported this fact to Officer Fuller, who already was familiar with issues surrounding OCM and McDonald's business practices. In fact, Fuller began investigating McDonald earlier that year after a number of individuals similarly reported that they had sold boats on consignment through OCM but had not been paid.

Parks eventually arrived at his home in Lake Havasu City, where he was met by Kropp and some other individuals who had accompanied him. Kropp showed Parks paperwork that indicated he owned the boat and again asked Parks to give the boat to him. Parks responded that he was not willing to give Kropp the boat unless someone of authority confirmed the information in the paperwork and told him to release it.

At some point, Parks' spouse and Kropp separately called the Lake Havasu City Police Department. Officer Gray responded to the civil standby call after dispatch informed him that (1) Kropp wanted to retrieve a boat he believed was his, (2) Officer Fuller had advised Kropp to call for assistance if he located the boat, and (3) Kropp wanted the police present to ensure that the exchange occurred without incident.

Once at the scene, Officer Gray spoke with Kropp and Parks, both of whom informed him that the boat had been sold by OCM to someone in South Carolina. Kropp also gave Officer Gray the paperwork he previously had presented to Parks as proof of ownership. Officer Gray inspected the paperwork and ran a registration check through dispatch, which confirmed that Arizona records showed Kropp was the owner of the boat.

Officer Gray conveyed this information to Parks and said "[w]e're going to allow [Kropp] to take possession of the boat." (Doc. 39-2 at 17.) Parks gave Thompson's contact information to Officer Gray and then returned the boat to Kropp.

As a result, Thompson had to take legal action in Arizona to recover the boat. Thompson subsequently filed this action against the City and Officers Fuller and Gray, claiming that the officers deprived him of his property without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution, and Defendants negligently handled the civil standby call.

## II. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to establish the existence of material factual issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When parties submit cross-motions for summary judgment, the Court reviews "each motion on its own merits" and "consider[s] each party's evidentiary showing, regardless of which motion the evidence was tendered under." *Oakley, Inc. v. Nike, Inc.*, 988 F. Supp. 2d

1130, 1134 (C.D. Cal. 2013) (citing *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001)).

**III. Discussion**

For the most part, the pertinent facts are not genuinely disputed. Although the parties each identify some facts as disputed in their separate and controverting statements of facts, these disputes either involve immaterial matters, are semantic squabbles over the opposing party's characterization of deposition testimony, or reflect disagreements over the inferences that reasonably may be drawn from the otherwise undisputed evidence. These latter disagreements are what preclude summary judgment for most claims.

**A. 42 U.S.C § 1983**

In Count I of his complaint, Thompson alleges that Officers Gray and Fuller deprived him of his personal property—the boat—without due process of law in violation of his clearly established Fifth and Fourteenth Amendment rights.[1] Thompson seeks to hold these Defendants liable under 42 U.S.C. § 1983, which creates a cause of action against any person who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution and laws of the United States. Section 1983 is not a source of substantive rights but merely a method for vindicating federal rights established elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To succeed on a claim under § 1983, a plaintiff must show "(1) that a right secured by the Constitution or the laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of State law." *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). "Liability under § 1983 can be established by showing that the defendants either personally participated in a deprivation of the

---

[1] Thompson's complaint does not specify whether all of his claims are against all Defendants. Consequently, all Defendants moved for summary judgment on Count I. In his response memorandum and cross-motion for summary judgment, however, Thompson clarifies that his § 1983 claim is against Officers Fuller and Gray only, and that the City is a party only to the negligence claim alleged in Count II. (Doc. 38 at 3 n.1.) The Court therefore will not discuss the standards for municipal liability under § 1983.

- 4 -

plaintiff's rights, or caused such a deprivation to occur." *Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981).

As relevant here, the due process guaranteed by the Fifth and Fourteenth Amendments requires, at a minimum, notice and an opportunity to be heard before the government may take a person's property or cause it to be taken. *See id.* at 1125-26. The Ninth Circuit previously explained in a similar context:

> that there may be a deprivation within the meaning of § 1983 not only when there has been an actual "taking" of property by a police officer, but also when the officer assists in effectuating a repossession over the objection of [the current possessor] or so intimidates [him] as to cause him to refrain from exercising his legal right to resist a repossession. While mere acquiescence by the police to "stand by in case of trouble" is insufficient to convert a repossession into state action, police intervention and aid in the repossession does constitute state action.

*Id.* at 1127.

There is no genuine dispute that the Thompson owned the boat at the time Kropp recovered it from Parks. Kropp had consigned the boat to OCM, which in turn had sold it to Thompson. Thompson paid for the boat in full, and Parks was tasked with transporting the boat to Thompson in South Carolina. Thus, the Fifth and Fourteenth Amendments entitled Thompson at the very least to notice and opportunity to be heard before the government could deprive or cause him to be deprived of the boat.

The parties disagree over the question of state action. Thompson contends that Officer Gray's involvement in the incident changed the taking from a purely private exchange between Parks and Kropp to a deprivation caused or facilitated by the government. In contrast, Defendants argue that Officer Gray's involvement was minimal, that he simply responded to a civil standby call and answered questions about Kropp's paperwork, and that his mere presence at the scene does not constitute state action for purposes of § 1983.

With respect to Officer Gray, there is sufficient evidence for a jury reasonably to find in favor of Thompson. For example, Parks repeatedly testified that he was not going

to give Kropp the boat unless someone of authority told him to do so. (Doc. 30-1 at 6-7.) He also testified that he did not feel free to argue with Officer Gray over the ownership of the boat, he was under the impression that "there might be a problem" if he refused to release the boat to Kropp after Officer Gray confirmed the paperwork, and that he would have taken the boat to Thompson in South Carolina had Officer Gray not confirmed that Arizona records identified Kropp as the owner. (*Id.* at 7, 12, 14.) Additionally, though he was told that OCM had sold the boat to someone in South Carolina, Officer Gray testified that the documents Kropp provided to him contained enough information to make the determination that Kropp was the person legally entitled to possession of the boat. (Doc. 30-2 at 10-11; Doc. 39-2 at 14, 18.) He also testified that he would have called a supervisor to the scene had Parks refused to give the boat to Kropp, indicating that his role in the repossession was more active than Defendants now argue. (Doc. 30-2 at 12.) Moreover, the transcript of the contemporaneous recording made by Officer Grays' body camera shows that he told Parks and Kropp:

> So here's the deal. I was not able to get a hold of Detective Fuller at this time but I did contact my on-duty sergeant saying we have all the paperwork and everything showing that [the boat] is in [Kropp's] name. We're going to allow him to take possession of the boat.

(Doc. 39-2 at 17.) Based on this evidence, a jury reasonably could infer that Officer Gray was more than merely present at the scene, and that he played a more active role in determining ownership rights to the boat and facilitating its release.

A jury reasonably could come to the opposite conclusion, as well. Indeed, it is undisputed that Officer Gray did not threaten Parks with arrest if he refused to release the boat to Kropp. (Doc. 30-1 at 7, 12.) It also is undisputed that Officer Gray did not personally unhook the boat from Parks' trailer or return it to Kropp. (*Id.* at 11.) Moreover, Officer Gray testified that he was under the impression that Parks was willing to give Kropp the boat so long as someone verified the documents Kropp had presented to him. (Doc 30-2 at 20.) Portions of Parks' deposition testimony are consistent with Officer Gray's impression. For example, Parks testified that "if the dog catcher would

have come up and told me and ran the plates and done that stuff and said it's . . . [Kropp's], I'm not going to keep [Kropp's] boat." (Doc. 30-1 at 12.)  A jury hearing this testimony reasonably could infer that Parks merely wanted independent verification that Kropp's paperwork was authentic, and that his decision to release to boat to Kropp had nothing to do with intimidation or with Officer Gray's authority as a police officer.

The same is not true, however, with respect to Officer Fuller, who was at most only peripherally involved in the incident.  Indeed, Officer Fuller was not even present during the encounter between Kropp, Parks, and Gray.  Nor was he directing Officer Gray's conduct during the incident. (Doc. 39-2 at 17.)  Rather, Kropp reported to Officer Fuller that he had not been paid by OCM and that he intended to recover his boat, and Officer Fuller merely told Kropp to call for assistance if he found it.  Additionally, after the boat had been released to Kropp, Thompson presented Fuller with proof that he had purchased the boat but Officer Fuller declined to get involved with adjudicating the disputed ownership rights.  On this record, Officer Fuller's involvement was too attenuated to permit a jury to hold him liable under § 1983.

Accordingly, the Court grants summary judgment in favor of Officer Fuller on Count I, but denies summary judgment for either party with respect to Officer Gray.

**B. Negligence**

In Count II of his complaint, Thompson alleges that all Defendants were negligent in their handling of the dispute over ownership of the boat.  Defendants have not moved for summary judgment on any part of this claim.  Instead, Thompson contends that the unrebutted opinions of his expert witness, Bennie Click, demonstrate that he is entitled to judgment as a matter of law. (Doc. 57 at 8.)  In essence, Thompson argues that expert witness testimony is necessary to prove compliance with the applicable standard of care for police officers responding to a civil standby call.  The Court disagrees.

Thompson cites no authority that requires expert testimony in similar negligence actions brought against police officers.  Arizona law requires expert witness testimony in some circumstances, such as medical malpractice actions, *see* A.R.S. § 12-2602, but has

not imposed a similar requirement on claims for negligent police conduct. Having carefully considered the parties' arguments and their cited legal authorities, the Court concludes that a jury is capable of determining whether Defendants' actions complied with the relevant police policies without the assistance of a Defense expert witness.

Moreover, Thompson is not entitled to summary judgment on his negligence claim for the same reasons he is not entitled to summary judgment on his § 1983 claim. A jury hearing the evidence reasonably could interpret the situation differently and in favor of either party. Stated differently, Click's opinions are based on one reasonable interpretation of the evidence, but a jury reasonably could interpret Defendants' actions differently. To grant summary judgment for Thompson based Click's opinions therefore would require the Court to adopt Thompson's reasonable interpretation of the evidence and reject Defendants' reasonable interpretation. Choosing between competing reasonable interpretations and inferences, however, is a quintessential jury function. The Court therefore denies Thompson's motion.[2]

**IV. Conclusion**

For the foregoing reasons, the Court grants summary judgment for Officer Fuller on Thompson's § 1983 claim, but denies the same to either party with respect to Officer Gray because a jury reasonably could find for either party on the evidence presented. The Court also denies summary judgment for Thompson on his negligence claim both because Defendants are not required to rebut Click's opinions through expert witness testimony, and because a jury reasonably could interpret the evidence differently than Click has.

**IT IS ORDERED** that that Defendants' motion for summary judgment (Doc. 29) is **GRANTED IN PART** and **DENIED IN PART** as explained herein.

/ / /

/ / /

---

[2] For this reason, the Court need not address Defendants' alternative argument about the availability of attorneys' fees as damages.

- 8 -

**IT IS FURTHER ORDERED** that Thompson's motions for summary judgment (Docs. 38, 57) are **DENIED**.

Dated this 9th day of February, 2018.

*Douglas L. Rayes*
United States District Judge